IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| GRISHM BUCAANAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 5:24-cv-06111-RK ) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) ) |
| Defendant. | ) |

**ORDER**

Before the Court is Plaintiff Grishm Bucaanan's appeal brought under 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). After careful consideration and for the reasons explained below, the Court **ORDERS** that the ALJ's decision is **REVERSED**, and this case is **REMANDED**.

**Background**

Plaintiff filed applications under Title II of the Social Security Act for disability insurance benefits and Title XVI for supplemental security income ("SSI") in June 2022, alleging a disability onset date of March 16, 2020. (Tr. at 188-201.) After Plaintiff's applications were denied at both the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge. Following a full hearing, (*id.* at 33-59), the ALJ issued an unfavorable decision finding Plaintiff not disabled for purposes of receiving social security benefits, (*id.* at 11-32). The Appeals Council then denied Plaintiff's request for review, (*id.* at 2-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff accordingly seeks judicial review of the ALJ's unfavorable decision denying his applications to receive social security benefits.

**Discussion**

The Court's review of the ALJ's decision to deny disability insurance and SSI benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). Put another way, "we will affirm if the ALJ made no legal error and the ALJ's decision is supported by substantial

evidence on the record as a whole." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (internal quotation marks omitted). Here, Plaintiff argues that the ALJ "erred as a matter of law by failing to consider and evaluate the Plaintiff's sworn hearing testimony, in violation of 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p." (Doc. 11 at 11.) Plaintiff further argues that the ALJ mischaracterized Plaintiff's activities of daily living. (*Id.* at 19-20.)

## I. ALJ's Decision

In the ALJ's decision, the ALJ conducted the required five-step sequential evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability of March 16, 2020. (Tr. at 16.) At Step Two, the ALJ found that Plaintiff had the following severe impairments:

> [r]ight knee arthrosis; degenerative joint disease of the left knee with chondromalacia/meniscal tear; degenerative disc disease of the thoracic spine; hernias status-post hernia repair; status-post cystoscopy with bilateral ureteroscopy and left stent placement; and bipolar disorder.

(*Id.*) At Step Three, the ALJ concluded that neither the severe nor non-severe impairments Plaintiff suffered from individually or collectively met or medically equaled a Listed Impairment. (*Id.* at 17-20.)

At Step Four, the ALJ determined Plaintiff's residual functional capacity ("RFC"), which is the "most [he] can do" despite any "physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). The ALJ concluded that Plaintiff could

> sit for 6 hours out of 8 hours; and he can stand and walk for 2 hours out of 8 hours. Claimant is able to lift, carry, push, or pull 5 pounds frequently and up to and included 10 pounds occasionally. . . . Claimant must have job duties that are simple, repetitive, and routine. These duties must be consistently the same with little or no change. Claimant should never be expected to exercise independent judgment regarding the nature of his job duties. He is able to concentrate and persist for 2 hours at a time before requiring a break. Claimant should never have job duties that require interaction with the public as a primary function. He can have up to occasional contact with co-workers and with supervisors. Co-worker contact must be incidental and not in a team or teamwork setting.

(Tr. at 20.)

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's function reports, medical treatment records, medication history, and Plaintiff's activities of daily living, along with the medical opinions and prior administrative medical findings also contained in the administrative record. (*Id.* at 21-24.) The ALJ did not explicitly reference Plaintiff's hearing testimony in the

2

decision except to note that Plaintiff "stated that he had his name legally changed to that of Kevin Gipson, effective October 2021." (Tr. at 14.)

The ALJ noted the following complaints from Plaintiff's July 2022 function report:

> claimant alleged he was unable to work because "I get overwhelmed and lose temper easily, then fall apart; I also can't be on my feet working without frequent breaks due to pain in my feet, knees, and back, I get 45 minutes to 1 hour maximum at a time."

(*Id.* at 21.) The ALJ also noted the following complaints from Plaintiff's December 2022 function report:

> claimant alleged "can't be on my feet for more than an hour, and need to rest for 15-20 minutes after being on my feet for an hour; cannot lift or carry more than 25 pounds due to hernia that hasn't healed properly; not able to engage in repetitive actions; need reminders and check-off lists for household chores and personal care; need alarms to remind me of doctor appointments and need someone to go with me if there is any information or instructions about procedure."

(*Id.*) However, after noting these complaints from the function reports, the ALJ concluded that "claimant's statements concerning the intensity, persistence and limiting effects of his alleged symptoms and limitations are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

Related to Plaintiff's complaints of pain in his feet, knees, and back, the ALJ found that Plaintiff's treatment for musculoskeletal pain complaints "remains conservative in care, with claimant taking 'Tylenol and using Icy Hot rub for pain,' and Voltaren gel." (*Id.*) In an April 2021 follow-up visit, Plaintiff reported that "his knee is pain free today," and Plaintiff declined orthoscopic intervention at that time because he was not having any pain. (*Id.* at 22.) Plaintiff received an injection in his left knee on April 19, 2021, and was told to continue Voltaren gel and physical therapy. (*Id.*) The ALJ noted that it did not appear that Plaintiff pursued physical therapy as recommended. (*Id.*) However, Plaintiff returned in November 2022 for knee injections, reporting that his prior injections "provided him with significant relief, they usually last him around 5-6 months." (*Id.*)

As for Plaintiff's mental condition (bipolar disorder), the ALJ noted that treatment in this area has also been conservative, "with follow-up every few months apart." (*Id.*) Plaintiff's earliest note from a mental health provider is on February 9, 2021—nearly a year after Plaintiff's alleged date of onset of disability—and merely indicated that Plaintiff lives with his ex-wife and that he frequently gets firewood from outside for their wood stove. Follow up mental health visits in

3

March and May of 2021 similarly note that Plaintiff was living with his ex-wife and that he "worked daily in the country," i.e. collecting wood or doing other chores, for his ex-wife. (*Id.* at 22-23.) In August 2021, Plaintiff reported he was doing well with his Lithium medication and that he had stopped taking Wellbutrin because he no longer needed it. (*Id.*) In a September 2022 mental health visit, Plaintiff reported that "I'm still doing good" and he reported that a trip to Iowa for an Anime convention "was great," and he spent most of the appointment describing his trip and experiences while he was out of town and helping friends move. (*Id.* at 23.) The ALJ also considered Plaintiff's activities of daily living, noting that Plaintiff "attends to his own personal needs and hygiene, prepares meals, performs household chores, drives independently, [and] goes shopping." (*Id.*) The ALJ listed Plaintiff's hobbies such as "buck skinning, cosplay, playing magic The Gatherings, reading, fishing, drawing, stain glass, and blacksmithing." (*Id.* at 23-24.)

Thus, the ALJ concluded that "the evidence in the record consists primarily of documentation of [Plaintiff's] subjective complaints, with little in the way of objective findings to support functional limitations as severe as [Plaintiff] has alleged." (*Id.* at 24.) The ALJ found Plaintiff "has limitations no greater than those described in the residual functional capacity assessment set forth herein." (*Id.*) Then, based on testimony of a vocational expert, who was asked to consider Plaintiff's age, education, work experience, and RFC, the ALJ concluded at Step Five that Plaintiff could perform work such as semi-conductor bonder, lens inserter, and wire wrapper—for which significant numbers of jobs exist in the national economy. (*Id.* at 26-27.) Accordingly, the ALJ concluded that Plaintiff was not under a disability from the alleged onset date and denied Plaintiff's application for social security benefits. (*Id.* at 27.)

## II. Plaintiff's Hearing Testimony

Plaintiff testified before the ALJ during the hearing on August 17, 2023. (Tr. at 35-55.) Plaintiff testified that he lives with his ex-wife and that she is his caretaker. (*Id.* at 41.) Plaintiff testified that he selected March 16, 2020, as the onset date of disability because that was when he lost his job at the bullet factory. (*Id.*) According to Plaintiff's testimony, he lost that job because "I couldn't move fast enough for them and I couldn't pay attention I guess to the proper detail of what they needed." (*Id.* at 41-42.) Plaintiff also testified that he "get[s] angry, frustrated and depressed" when he works "a sit down job." (*Id.* at 54.)

Plaintiff complained about physical limitations and pain related to a recurring hernia. (*Id.* at 44.) Plaintiff testified he had the first surgery to repair the hernia in 2013. Then, in 2020,

4

Plaintiff had another surgery because the hernia mesh failed. (*Id.* at 46.) Plaintiff testified that an infection developed after the 2020 surgery and that the hernia mesh failed again. Plaintiff had not yet had a third surgery as of the hearing date.[1] (*Id.* at 47.) As a result of the infection, Plaintiff testified that "there's a little bit of pain when I move. A lot of discharge. And I get chills and fevers because of it." (*Id.* at 48.) Plaintiff hypothesized that if he had a job, the symptoms related to the hernia infection would cause him to call in sick to work "about one or two times a week" because "the fever's high. I am incredibly tired because I'm fighting this. I've thrown up a couple of times." (*Id.* at 48-49.) He testified that he had an open wound that has not healed since the 2020 hernia surgery. (*Id.* at 49.)

Plaintiff also testified about knee pain, stating that he could walk a couple of blocks, but "[n]ot very easily," and that he would not be able to stand in a line for 20 minutes. (*Id.* at 50.) Plaintiff further explained in his testimony that he could stand for "probably about ten, 15" minutes by "bouncing from one leg to the other so that . . . my knee doesn't lock up on me." (*Id.*) He also testified that he could probably walk for "about five" minutes and that he could sit still for about ten to fifteen minutes. (*Id.* at 50-51.) He testified that when he sits longer than this "my back starts hurting. My legs will start hurting. My feet will start burning or tingling or feeling like electric shocks going through them, so I got to move." (*Id.* at 51.)

In relation to Plaintiff's mental health, Plaintiff testified that he generally has difficulty being out in public and interacting socially, and that when he does go out he "tr[ies] to find an area where it's like there's nobody around." (*Id.* at 52.) When he goes grocery shopping, Plaintiff testified that "it's got to be a short trip and I've got to have somebody with me." (*Id.*) More specifically, Plaintiff testified about attending an Anime convention in Iowa and said that he "didn't talk to anybody. I kind of kept to myself and away from everybody as much as possible" and that he

> [s]pent a lot of time outside off in a corner somewhere. And just basically when I'm walking through, if I had to go through the crowd, head's down watching my feet and just getting to where I need to go and then end up a lot of time back in my hotel room just to de-stress.

(*Id.* at 52-53.)

---

[1] Plaintiff testified that a third hernia surgery was scheduled for the Monday following his hearing before the ALJ.

### III. Consideration of Plaintiff's Hearing Testimony and Subjective Complaints

Plaintiff argues that the ALJ erred as a matter of law by failing to consider and evaluate Plaintiff's hearing testimony, in violation of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16-3p.[2] The Commissioner argues that substantial evidence supports the ALJ's decision and that because the ALJ "considered the function reports, the ALJ was not required to further discuss" the allegations made by Plaintiff in his hearing testimony. (Doc. 14 at 12.)

To evaluate the credibility of a claimant's allegations of pain or other disabling symptoms, the ALJ must follow a two step process:

> First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . .

SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). In evaluating the intensity and persistence of a claimant's symptoms, such as pain, and determining the extent to which a claimant's symptoms limit their capacity to work, the ALJ must consider all of the evidence presented with regard to the following factors:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3). "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski*, 739 F.2d at 1322. "In rejecting a claimant's complaints of pain as not credible, we expect an ALJ to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)).

---

[2] Plaintiff does not appeal based on the ALJ's credibility determination as it relates to Plaintiff's function reports. As discussed above, the ALJ noted the statements in the function reports and then identified inconsistencies with the function reports in the other evidence in the record. The ALJ's credibility determinations as to the function reports are supported by substantial evidence.

6

Here, the ALJ appears to accept that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms.[3] However, the ALJ concluded that Plaintiff's "statements concerning intensity, persistence and limiting effects of his alleged symptoms and limitations are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 21.) In coming to this conclusion, the ALJ referenced Plaintiff's two function reports (July 2022 and December 2022) and explained the inconsistencies between those function reports and the medical evidence and other evidence in the record. However, the ALJ only referenced Plaintiff's hearing testimony to note that Plaintiff legally changed his name to "Kevin Gipson, effective October 2021." (Tr. at 14.)

In the decision, the ALJ did not mention Plaintiff's hearing testimony as it related to Plaintiff's subjective complaints, provide reasons for discrediting that testimony, or make a credibility determination as to Plaintiff's hearing testimony. Reference to Plaintiff's hearing testimony and the reasons for discrediting it were required in this case because when a disability determination "depends upon the credibility of the claimant, the ALJ must make clear and express findings of fact on the issue of credibility and give her reasons for discrediting of the testimony of the claimant." *Dale v. Apfel*, 45 F. Supp. 2d 674, 679 (E.D. Mo. 1999) (footnote omitted); *see also Guilliams*, 393 F.3d at 802 (requiring "ALJ to detail the reasons for discrediting the testimony and set forth the inconsistencies found"); *Brett M. v. Saul*, 611 F. Supp. 3d 771, 781 (D.S.D. 2020) (remanding for credibility determination where, among other things, "[t]he ALJ never acknowledged Mr. M. testified at the administrative hearing or openly referred to his testimony"); *Colegrove v. Berryhill*, No. CV 17-99-BLG-TJC, 2018 WL 4350282, at *9 (D. Mont. Sept. 12, 2018) ("Because the ALJ failed to point to specific parts of Plaintiff's testimony he found not credible, and failed to link that testimony to particular parts of the record, the ALJ erred.") (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015)); *see also Swaney v. Barnhart*, No. C05-2078, 2006 WL 4079117, at *17 (N.D. Iowa Oct. 25, 2006) ("The ALJ should have considered the *Polaski* factors and articulated inconsistencies upon which he relied in order to find Mr. Swaney not credible.").

---

[3] In the ALJ's decision, the ALJ references the two-step process for evaluating Plaintiff's subjective complaints of symptoms but proceeds to discuss Plaintiff's allegations of intensity and persistence in light of the other evidence in the record without making an explicit finding as to the first step. (*See* Tr. at 20-21.)

7

Case 5:24-cv-06111-RK    Document 16    Filed 03/05/26    Page 7 of 10

Here, the ALJ's decision depends upon the credibility of Plaintiff because if Plaintiff's complaints were fully credible—for example, if his testimony that he would have to call in sick from work once or twice a week were true—then he could not work at all, according to the testimony of the vocational expert. (*See* Tr. at 58-59.) *See also Dale*, 45 F. Supp. 2d at 679 n.2 (noting the ALJ's decision depended on Dale's credibility because believing Dale's subjective complaints would mean Dale could not work at all). Thus, the ALJ was required to explicitly determine whether Plaintiff's hearing testimony was credible. The ALJ failed to do so.

The Commissioner argues that the ALJ was not required to consider Plaintiff's hearing testimony because the ALJ considered Plaintiff's function reports, which were consistent with Plaintiff's hearing testimony. (Doc. 14 at 12.) However, Plaintiff's hearing testimony included statements which were not included in the function reports. For example, Plaintiff testified that due to the infection from his recurring hernia he would likely have to call in sick to work once or twice a week if he were working. Additionally, in relation to Plaintiff's mental health, he testified that he experienced issues at the Anime convention in Iowa in that he did not talk to anyone, spent a lot of time outside and de-stressing in his hotel room, and that he had problems with the crowd. These additional allegations were not included in Plaintiff's function reports and were not mentioned by the ALJ in her decision; therefore, it follows that the ALJ did not provide any reasons for discrediting these complaints (or Plaintiff's hearing testimony more generally).[4]

The ALJ's failure to consider Plaintiff's hearing testimony about the Amine convention highlights the deficiencies in determining Plaintiff's credibility. Based on treatment notes from a September 2022 mental health visit, the ALJ noted that Plaintiff "had no reported difficulties taking a trip to Iowa for the Anime convention that 'was great.'" (Tr. at 19; *see also id.* at 23, 24.) The ALJ referenced these treatment notes three times in support of finding inconsistencies between Plaintiff's functional reports and the rest of the record. However, Plaintiff's hearing testimony contradicted the treatment notes, and indicated that he had issues with the crowd at the convention

---

[4] The Court need not determine whether the ALJ's decision would be erroneous if Plaintiff's function reports and hearing testimony were fully consistent and the hearing testimony did not include additional subjective complaints because the Court finds Plaintiff's hearing testimony is more expansive than Plaintiff's function reports in some regards. *Cf. Baldwin v. Berryhill*, No. 4:16-cv-00565-NCC, 2017 WL 4260554, at *6 (E.D. Mo. Sept. 26, 2017) ("Because the two sources of testimony are substantially similar, it is logical for the ALJ to weigh them identically and to discount them for the same reasons. Therefore, the ALJ need not weigh the hearing testimony separately from the Third Party Function Report.") (concluding ALJ did not err by failing to explicitly consider third party's hearing testimony).

8

and did not talk to anyone. The ALJ did not appear to consider this inconsistency and certainly did not resolve it or explain why she did not find Plaintiff's hearing testimony on this issue credible (or not credible). *See Holm v. Kijakazi*, No. 22-cv-00326-BP, 2023 WL 12199907, at *2 (W.D. Mo. Feb. 14, 2023) ("[I]t is the ALJ's role to resolve inconsistencies in the Record (such as those between Plaintiff's testimony and other evidence in the Record).") Rather than resolving this inconsistency, it appears that the ALJ did not consider Plaintiff's hearing testimony at all on this matter, as the ALJ noted that Plaintiff "had no reported difficulties taking a trip to Iowa for the Anime convention."[5]

The Court further finds that the ALJ's error by not making a credibility finding as to Plaintiff's hearing testimony is not harmless. An error is not harmless if Plaintiff can "provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Here, the vocational expert testified that if an "individual would occasionally be off task and unable to follow through with the completion of even simple tasks" there would not be jobs available to that person and if an "individual is going to be missing two days of work per month" that would preclude work. (Tr. at 58-59.) Plaintiff's hearing testimony indicated that he lost his job in the bullet factory because "I couldn't move fast enough for them and I couldn't pay attention I guess to the proper detail of what they needed." (*Id.* at 41-42.) This testimony, if considered credible, may affect Plaintiff's ability to be on task and to follow through with simple tasks. Plaintiff's hearing testimony also alleged that he would need to call in sick to work once or twice a week due to the infection and symptoms related to his recurring hernia. Thus, a proper determination of the credibility of Plaintiff's hearing testimony may affect the outcome of Plaintiff's disability claim, and the error is not harmless.

On remand, the ALJ should evaluate Plaintiff's credibility under the *Polaski* factors and make an explicit credibility finding as to both Plaintiff's function reports and hearing testimony.[6]

---

[5] Plaintiff also argues that the ALJ's decision mischaracterizes Plaintiff's activities of daily living by referring to Plaintiff's hobbies as if Plaintiff currently engages in those activities. Plaintiff notes that his function reports state that Plaintiff has not been able to do those hobbies for the last three to five years. The Court need not reach this issue as it finds that remand is required based on the ALJ's failure to make a credibility determination as to Plaintiff's hearing testimony. However, on remand the ALJ should consider both Plaintiff's function reports and hearing testimony regarding his hobbies, if the ALJ relies on Plaintiff's hobbies in the decision.

[6] While the ALJ is not required to make an explicit reference to every subjective complaint by Plaintiff in the decision, where, as here, the ALJ fails to mention Plaintiff's substantive hearing testimony—

9

## Conclusion

Accordingly, after careful consideration and for the reasons explained above, the Court **ORDERS** that the ALJ's decision is **REVERSED**, and this case is **REMANDED** for reconsideration by the ALJ consistent with the Court's Order as set out above.

    **IT IS SO ORDERED.**

    s/ Roseann A. Ketchmark
    ROSEANN A. KETCHMARK, JUDGE
    UNITED STATES DISTRICT COURT

DATED: March 5, 2026

---

including all of the subjective complaints therein—the Court finds that remand is proper to fully develop the record and enable meaningful review.

    Had the ALJ "explicitly discredited [Plaintiff's] testimony after conducting a *Polaski* analysis, the court would owe that finding considerable deference." *Brett M.*, 611 F. Supp. 3d at 781. Here, however, the ALJ made no explicit credibility finding as to Plaintiff's hearing testimony, so considerable deference to the ALJ's credibility finding is not warranted by the Court.